EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Adrían O. Díaz Díaz<br><br>    Apelante<br><br>       v.<br><br>Asociación de Residentes Urbanización Quintas de San Luis, Inc.<br><br>    Apelado | 2016 TSPR 213<br><br>196 DPR \_\_\_\_ |

Número del Caso: AC-2015-83

Fecha: 14 de octubre de 2016

Tribunal de Apelaciones:

    Región Judicial de Caguas-Humacao, Panel IX

Abogados de la parte Peticionaria:

    Lcdo. Adrián O. Díaz Díaz
    Lcdo. Edgardo Veguilla

Abogado de la parte Recurrida:

    Lcdo. Ricardo Collazo Suarez

Materia: Sentencia con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Adrián O. Díaz Díaz

     Apelante

       v.                          AC-2015-0083

Asociación de Residentes Urbanización Quintas de San Luis, Inc.

     Apelado

SENTENCIA

En San Juan, Puerto Rico, a 14 de octubre de 2016

La controversia inicial que presenta este caso es si las asociaciones de residentes pueden variar o condicionar la forma de acceso, incluso desactivar los dispositivos electrónicos de entrada automática tales como *beepers* o sellos, a los residentes que adeudan pagos por concepto de cuotas de mantenimiento. No obstante, en vista de que las partes llegaron a una transacción extrajudicial, debemos determinar, como cuestión de umbral, si en estos momentos el caso es justiciable y amerita que nos expresemos en cuanto a la controversia planteada. Luego del análisis correspondiente,

procede desestimar la demanda porque esta se tornó académica.

I

En 2011, el Sr. Adrián O. Díaz Díaz presentó una demanda sobre sentencia declaratoria, daños y perjuicios y una solicitud de interdicto provisional, preliminar y permanente contra la Asociación de Residentes de la Urbanización Quintas de San Luis (Asociación).[1] En esencia, planteó que la Asociación estaba impedida de implementar restricciones que le limitaran el libre acceso a la urbanización a los residentes que tuvieran deudas por concepto de cuotas de mantenimiento. Además, solicitó que se determinara que el reglamento de la Asociación, cuyas

---

[1] Paralelo a este procedimiento judicial, se encontraba ante los tribunales una demanda de cobro de dinero por concepto de cuotas de mantenimiento que la Asociación presentó contra el señor Díaz Díaz en virtud de la Regla 60 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Esa reclamación se presentó ante el Tribunal de Primera Instancia en el 2008, pero desde el 2006 la Asociación estuvo realizando gestiones de cobro de forma extrajudicial. En ese pleito de cobro de dinero, el Tribunal de Primera Instancia notificó una sentencia en el 2009 en la que ordenó al señor Díaz Díaz al pago de $2,855.86 por las cuotas adeudadas. Sin embargo, ante una moción de relevo de sentencia y luego de varios años de litigio, en el 2012, en reconsideración, el Tribunal de Apelaciones dejó sin efecto el dictamen del foro primario, toda vez que la demanda, las citaciones y la sentencia no se le notificaron al señor Díaz Díaz conforme a Derecho. Asociación de Residentes Urb. Quintas de San Luis, Inc. v. Adrián O. Díaz Díaz y Rita Catalá Miguez, KLCE2010-01255. Vale la pena destacar que mientras los dos casos se litigaban simultáneamente, la Asociación le planteó al Tribunal de Primera Instancia que el caso de epígrafe, donde se impugna la validez del reglamento de la urbanización, se presentó por el señor Díaz Díaz con "el propósito de tratar de construir un ataque colateral a la sentencia de cobro, la cual […] [en aquel momento era] final y firme". Apéndice, pág. 62.

cláusulas permitían lo anterior, eran contrarias a la Ley de Control de Acceso, 23 LPRA sec. 64 et seq.

Igualmente, el señor Díaz Díaz solicitó que se resolviera que la determinación de la Asociación que restringía el poder de los residentes de votar en las asambleas mediante "proxy" a aquellos escenarios donde el poder fuese delegado exclusivamente a otros residentes de la urbanización no era válida. Además, arguyó que ciertos cargos denominados como *gastos administrativos* incluidos en el cobro mensual de la cuota de mantenimiento eran ilegales. Por lo tanto, exigió que la Asociación dejara de cobrar y devolviera lo ya facturado por ese concepto. Del mismo modo, el señor Díaz Díaz reclamó que se le ordenara a la Asociación reconocerle el derecho al voto a los residentes con deudas por concepto de cuotas de mantenimiento. Tras evaluar esas reclamaciones, el Tribunal de Primera Instancia determinó que la petición de interdicto provisional era prematura.

Luego de varios incidentes procesales, el señor Díaz Díaz le informó al foro primario que la Asociación le había notificado por escrito que se aprestaba a desactivarle los sellos de entrada automática a los titulares que adeudaran el pago de cuotas de mantenimiento o que no tuvieran un plan de pago, como era su caso, por lo que solicitó otra vez un interdicto provisional, preliminar y permanente. En respuesta a esa petición, el Tribunal de Primera Instancia emitió una sentencia

declaratoria parcial en la que determinó que la Asociación podía condicionar el acceso a la urbanización a aquellos residentes que adeudaran cuotas de mantenimiento, con medidas tales como la desactivación de dispositivos electrónicos de entrada automática.

En desacuerdo con ese dictamen, el señor Díaz Díaz presentó una apelación ante el Tribunal de Apelaciones. No obstante, ese foro se declaró sin jurisdicción para atender el recurso debido a que el foro primario no le impartió finalidad a su dictamen conforme a la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V. En vista de lo anterior, el Tribunal de Primera Instancia emitió una sentencia declaratoria enmendada en la que, en esencia, concluyó nuevamente que la desactivación de dispositivos electrónicos de entrada automática era una medida válida que podía tomar la Asociación con respecto a los residentes que adeudaran cuotas de mantenimiento. Insatisfecho con esa determinación, el señor Díaz Díaz recurrió ante el Tribunal de Apelaciones. Ese foro emitió una sentencia mediante la cual confirmó la decisión del foro primario. Una oportuna moción de reconsideración fue denegada. Inconforme con ese dictamen, el señor Díaz Díaz presentó una apelación ante nos, recurso que acogimos según presentado, por existir sentencias contradictorias de varios Paneles del Tribunal de Apelaciones.

El 28 de junio de 2016, celebramos una vista oral en la que tuvimos la oportunidad de escuchar los argumentos

de ambas partes. A preguntas de los integrantes de este Tribunal, el señor Díaz Díaz informó que alcanzó una transacción extrajudicial con la Asociación con la cual saldó la deuda que tenía por concepto de cuotas de mantenimiento. Transcripción de la vista oral, págs. 19, 25. Asimismo, el abogado de la Asociación confirmó lo que expresó el peticionario y añadió que ese acuerdo se logró "hace alrededor de un mes o dos meses atrás". Transcripción de la vista oral, pág. 43.

Más aun, en la parte final de la vista oral, el señor Díaz Díaz abundó respecto a los términos de esta transacción. Concretamente, informó que el acuerdo consistió en un plan de pago por la suma de $500, que se firmó "hace como tres meses". Transcripción de la vista oral, pág. 47. No obstante lo anterior, indicó que entendía que el caso no era académico. Transcripción de la vista oral, pág. 47. La Asociación, por su parte, informó que pensaba que "lo más prudente era continuar el proceso del caso [y] llevarlo a sus últimas consecuencias para que el tribunal tuviese la oportunidad [de expresarse] […]". Transcripción de la vista oral, pág. 44.

II

Los tribunales solo podemos adjudicar casos justiciables. Torres Montalvo v. Gobernador ELA, Op. de 7 de marzo de 2016, 2016 TSPR 38, pág. 6, 194 DPR ___ (2016). Esto significa que únicamente tenemos jurisdicción para "resolver controversias genuinas surgidas entre

partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". E.L.A. v. Aguayo, 80 DPR 552, 559-560 (1958). Esta norma nos requiere que antes de disponer de un caso en los méritos, analicemos si la disputa que se nos plantea es apta para ser adjudicada por los tribunales. Sánchez et al. v. Srio. de Justicia et al., 157 DPR 360, 370 (2002). En el descargo de esa encomienda, tenemos la facultad inherente de investigar las circunstancias en las cuales se originan y desarrollan los litigios. E.L.A. v. Aguayo, supra, pág. 559. En esa faena, nos podemos valer de información obtenida a través de diversas fuentes, como las mociones de uno de los litigantes o de un tercero; los autos; **las admisiones de los abogados en los informes orales**, o el conocimiento judicial. Íd., pág. 561.

Luego de finiquitar ese proceso, estamos obligados a concluir que un caso no es justiciable ni susceptible de resolverse por los tribunales si: (1) la controversia esbozada requiere resolver una cuestión política; (2) la parte promovente no tiene legitimación activa; (3) después que ha comenzado el pleito, hechos posteriores lo convierten en académico; (4) las partes buscan obtener una opinión consultiva, o (5) se promueve un pleito que no está maduro. Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 932 (2011).

En cuanto la academicidad, hemos enfatizado que "un caso es académico cuando se trata de obtener un fallo

sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que [e]ste haya sido reclamado o una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". San Gerónimo Caribe Project v. A.R.P.e., 174 DPR 640, 653 (2008). Incluso, "una controversia puede convertirse en académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial tornan en ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos de derecho". P.P.D. v. Gobernador I, 139 DPR 643, 675-676 (1995). Es decir, un caso se convierte en académico cuando con el paso del tiempo, la controversia que plantea deja de ser viva y presente. Íd.

Cuando una controversia se convierte en académica y no restan otros asuntos por resolverse dentro del litigio, es deber de los tribunales desestimar el caso. Berberena v. Echegoyen, 128 DPR 864, 870 esc. 2 (1991). Cuando ese acontecimiento ocurre en la etapa apelativa, como norma general, los foros revisores tenemos la obligación de tomar varias medidas al respecto, entre estas: (1) desestimar el recurso ante nuestra consideración; (2) dejar sin efecto el dictamen del Tribunal de Primera Instancia y de ser necesario, la decisión del Tribunal de Apelaciones, y (3) devolver el caso al foro primario con instrucciones de que se desestime la demanda. Moreno v. Pres. U.P.R. II, 178 DPR 969, 975 (2010). Véase, además,

Berberena v. Echegoyen, supra. De esa forma, evitamos "que un dictamen que se tornó académico siga en vigor y oblig[ue] a las partes". Moreno v. Pres. U.P.R. II, supra, pág. 975. Así, dejamos "el camino libre a la litigación futura de las disputas entre las partes y preserva[mos] sus derechos, sin perjudicar a ninguna de ellas por una decisión que era meramente preliminar". Íd.

Por otro lado, la sentencia declaratoria es un recurso que le permite a las partes recurrir al tribunal para que declare derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V, R.59.1. De esa forma, "toda persona interesada en […] un contrato escrito u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por […] un contrato [,] […] podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dicho[] […] contrato […] y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven". Regla 59.2 de Procedimiento Civil, 32 LPRA Ap. V, R.59.2. En el caso particular de los contratos, las Reglas de Procedimiento Civil aclaran que pueden ser interpretados antes o después de haber sido infringidos. Íd.

Ahora bien, esto último hay que enmarcarlo dentro de los contornos de la doctrina de justiciabilidad. De esta forma, la procedencia de este recurso en esos escenarios

está limitada a casos que planteen una controversia "real, de índole práctica y no académica o teórica, y determinante del asunto en discusión". Coca-Cola v. Unión de Tronquistas, 109 DPR 834, 837 (1980). Así, la controversia trabada debe ser actual y entre partes que tengan intereses legales adversos. Asoc. Guardias Penales v. Srio. de Justicia, 87 DPR 711, 713 (1963). "La actualidad de la controversia surge cuando el tribunal […] [se] enfrenta[] con realidades, y no con hechos imaginados". Moscoso v. Rivera, 76 DPR 481, 493 (1954). Esto significa que para que los tribunales puedan dictar una sentencia declaratoria, el demandado debe haber "estado actuando, o amenazar con actuar de tal forma que exista la probabilidad sustancial de que se lleve a cabo una invasión de los derechos del demandante". Íd., pág. 492.

En cambio, "[s]i una disputa no está firmemente anclada en hechos específicos, adquiere un matiz teórico que generalmente la excluye del ámbito legítimo de la sentencia declaratoria". Coca-Cola v. Unión de Tronquistas, supra, pág. 838. Asimismo, hemos dejado claro que "si el daño que pueda ocasionar en el futuro depende de hechos contingentes que son demasiado especulativos, no podría obtenerse una declaración anticipada". Íd., pág. 493. "Un tribunal no debe determinar derechos futuros en anticipación de acontecimientos que posiblemente no ocurran." Íd.

III

En este caso, no está en controversia que cuando el señor Díaz Díaz presentó la demanda de epígrafe ante el Tribunal de Primera Instancia, existía una deuda por concepto de cuotas de mantenimiento vencidas y no pagadas. Tampoco existía un plan de pago. Del mismo modo, surge del expediente que la Asociación le notificó al señor Díaz Díaz y a los demás residentes que, en virtud de su reglamento, se aprestaba a desactivarle los sellos de entrada automática a la urbanización a los titulares morosos. En ese momento, existía una controversia justiciable y susceptible de adjudicarse por los tribunales mediante una sentencia declaratoria. Particularmente, la disputa sobre la legalidad de la disposición reglamentaria que autorizaba a la Asociación a llevar a cabo la gestión que se proponía tomar era una real, práctica, actual y trabada entre partes con intereses adversos.

Por un lado, la Asociación tenía un reglamento aprobado que le autorizaba a actuar en la forma en que anunció que se proponía a hacerlo, y por el otro lado, el señor Díaz Díaz era un residente moroso y sin plan de pago que entendía que la disposición reglamentaria que estaba por aplicarse en su contra no era válida en nuestro ordenamiento. Es decir, la Asociación estaba en posición de poner en vigor la cláusula de su reglamento que le permitía desactivarle el dispositivo de entrada automática

a un residente moroso sin plan de pago. En ese sentido, el daño que la Asociación le causaría al peticionario era inminente y no dependía de que ocurrieran otros hechos especulativos e inciertos.

Ahora bien, en estos momentos y como cuestión de umbral, debemos determinar si el caso continúa siendo justiciable, a la luz de las nuevas incidencias que las partes nos informaron en la vista oral que celebramos. En particular, tenemos que examinar qué impacto, si alguno, tuvo el hecho de que el señor Díaz Díaz transigiera extrajudicialmente con la Asociación la deuda por concepto de cuotas de mantenimiento. Sobre este punto, y antes de proseguir, enfatizamos que no está en duda que el señor Díaz Díaz tenía balances vencidos con la Asociación por concepto de la cuota de mantenimiento. Específicamente, ante la siguiente pregunta de uno de los integrantes de este Tribunal: "¿Qué motivó la Sentencia Declaratoria? ¿Había alguna controversia entre las partes? ¿Alguna deuda? ¿Alguna notificación de deuda que usted objetaba?", el señor Díaz Díaz contestó como sigue: "Sí, en ese momento histórico sí había una objeción en cuanto a la deuda que se estaba reclamando a mi familia […]". Transcripción de la vista oral, pág. 25.

Tampoco está en controversia la existencia y las particularidades del acuerdo extrajudicial que extinguió esa cantidad adeudada. Así lo anunció el propio señor Díaz Díaz al indicar que: "[e]sa controversia se resolvió […]

al fin y al cabo con un acuerdo entre las partes luego de que […] nosotros desmenuzáramos lo que era las mensualidades que tal vez se adeudaban por periodo de 5 años […]". Transcripción de la vista oral, pág. 25. En esa misma dirección, el representante legal de la Asociación indicó que "el colega [señor Díaz Díaz] tenía un caso de cobro desde 2006 que estuvo en varios procesos de apelación etcétera. En este año y yo creo hace alrededor de un mes o dos meses atrás se llegó a un acuerdo transaccional con la Asociación". Transcripción de la vista oral, pág. 43. Finalmente, el señor Díaz Díaz consignó para récord que ese acuerdo transaccional para saldar su deuda con la Asociación se firmó luego de que el Tribunal de Primera Instancia y el Tribunal de Apelaciones emitieran sus respectivas sentencias en el caso de epígrafe. Íd., pág. 47.

El hecho de que el Tribunal de Apelaciones dejara sin efecto la sentencia en cobro de dinero debido a la falta de jurisdicción sobre el señor Díaz Díaz, no significa que las cuantías que se le reclamaron a este dejaron de existir. Simplemente el dictamen judicial que ordenaba su pago dejó de tener eficacia. Además, los pagos posteriores que hizo el señor Díaz Díaz por concepto de cuotas de mantenimiento corrientes no saldaron la deuda inicial que motivó a la Asociación a presentar el pleito de cobro de dinero. Destacamos que **ambas partes admitieron** en la vista oral que llegaron a un acuerdo extrajudicial que extinguió

la deuda vigente hasta ese momento. Ante ese cuadro, aplica el axioma de que ante *admisión de parte, relevo de prueba*. Por lo tanto, resulta innecesario requerir prueba sobre ese acuerdo. Regla 803 de Evidencia, 32 LPRA Ap. VI. Basta con que tengamos conocimiento de su existencia y sus implicaciones para que lo podamos tomar en consideración al resolver este caso. Regla 201(E) de Evidencia, íd.

El contrato de transacción es un acuerdo "por el cual las partes, dando, prometiendo o reteniendo una alguna cosa, evitan la provocación de un pleito o ponen término al que habían comenzado". Art. 1709 del Código Civil, 31 LPRA 4821. A su vez, existen dos tipos de contratos de transacción, el judicial y el extrajudicial. Neca Mortg. Corp. v. A & W Dev. S.E., 137 DPR 860, 870 (1995). En lo aquí pertinente, la transacción extrajudicial es aquella que ocurre "antes de que comience el pleito que se quiere evitar, o cuando una vez comenzado, las partes acuerdan una transacción sin intervención del tribunal". Rodríguez v. Hospital, 186 DPR 889, 904 (2012). Una vez las partes llegan a este tipo de acuerdo, presentan una moción de desistimiento al Tribunal y el caso se archiva. Es menester destacar que "han de entenderse como resueltas con carácter final solo las cuestiones directamente relacionadas con el objeto transigido, lo que presupone la necesidad de claridad y precisión en la descripción de los asuntos transados". US Fire Insurance v. A.E.E., 174 DPR 846, 854 (2008). Por lo tanto, asuntos no contenidos en el

acuerdo, aun cuando se deriven del mismo, están sujetos a examen por parte de los tribunales.

Luego de la transacción entre las partes, la Asociación ya no se encuentra en posición de suspenderle el sello de entrada automática al señor Díaz Díaz en virtud de la disposición reglamentaria cuestionada, pues esa acción no es más que un mecanismo para forzar el pago de una deuda. Como esa deuda ya no existe, pues el acuerdo extrajudicial la extinguió, la cláusula del reglamento que autoriza a la Asociación a implementar ese mecanismo no puede ser implementada contra el peticionario, pues en estos momentos este no es un residente moroso sin plan de pago. En ese sentido, la controversia de autos no es más que una rama de un tronco que germinó de la deuda por concepto de cuotas de mantenimiento vencidas. En la medida en que ese árbol se arrancó de raíz con el acuerdo extrajudicial, la rama que hoy examinamos, irremediablemente, también desapareció. Esto implica que el interés adverso entre las partes se desvaneció. Actualmente, el señor Díaz Díaz no se encuentra en riesgo inminente de sufrir un daño por una actuación de la Asociación. **Por lo tanto, concluimos que la controversia ha dejado de ser una real, actual y entre partes con intereses legales adversos y pasado a ser una controversia abstracta, especulativa y <u>académica</u>.**

El hecho de que en nuestro ordenamiento proceda una sentencia declaratoria para interpretar un documento

constitutivo de un contrato antes de que este se infrinja, no subsana lo anterior. Para que la controversia que se nos presentó vuelva a ser justiciable, y susceptible de adjudicación mediante una sentencia declaratoria, es necesario que ocurran hechos futuros, que en estos momentos son inciertos y contingentes. Ante este nuevo cuadro, estamos impedidos de adentrarnos en el mundo de la especulación con tal de brindarle a las partes una opinión consultiva en el vacío para aclarar una aparente laguna en nuestro ordenamiento. No podemos determinar de antemano que el señor Díaz Díaz dejará de pagar la cuota de mantenimiento por al menos tres meses y que tampoco gestionará un plan de pago. Solo bajo ese escenario, es que la Asociación estaría nuevamente en posición de condicionar o variar el acceso del peticionario a la urbanización en virtud de la disposición reglamentaria impugnada. **Por lo tanto, es forzoso determinar que este caso se tornó académico.** No hemos encontrado alguna razón que nos adelante que la controversia pueda repetirse **entre las mismas partes y escapar la revisión judicial**, de tal forma que se justifique que la atendamos en estos momentos.

Por consiguiente, carecemos de jurisdicción para resolver la controversia original ante nuestra consideración. El hecho de que la controversia presentada sea interesante e importante para las partes, no exime de la exigencia constitucional sobre justiciabilidad.

"Apartarnos de esta norma, firmemente desarrollada y férreamente arraigada en nuestra jurisprudencia, es caer irremediablemente en pronunciamientos abstractos, especulativos y consultivos". Sánchez et al. v. Srio. de Justicia et al., supra, pág. 370.

IV

Por último, enfatizamos vehementemente que era una obligación ética de los abogados, como funcionarios de este Tribunal, notificarnos oportunamente de la transacción extrajudicial que afectó nuestra jurisdicción. El Tribunal advino en conocimiento del acuerdo extrajudicial al que llegaron las partes durante la vista de argumentación oral que celebramos. Allí, a preguntas de los integrantes de este Foro, las partes informaron para récord los detalles del acuerdo que saldó la deuda que propició este caso. Según expresaron, el contrato de transacción se llevó a cabo posterior a que acogiéramos el recurso de apelación, pero previo a que citáramos a las partes a la vista oral y a que esta se celebrara. Más preocupante todavía es el hecho de que admitieron que decidieron continuar con el caso para darle la oportunidad al Tribunal de expresarse sobre el asunto.

Apercibimos a los abogados que tienen que ser más diligentes en situaciones como esta. Recuérdese que hace casi cincuenta años le advertimos a los miembros de la profesión legal en Puerto Rico que ponerse de acuerdo para promover litigios colusorios, ficticios o que por alguna

otra razón no tienen cabida en nuestro ordenamiento, puede conllevar medidas disciplinarias severas. Véase E.L.A. v. Aguayo, supra, pág. 606.

V

Por los fundamentos antes expuestos, se dejan sin efecto los dictámenes de los foros inferiores. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, para que desestime la causa de acción planteada en este recurso por haberse tornado académica y analice si las demás controversias presentadas en la demanda, que no están ante nuestra consideración en estos momentos, deben ser desestimadas por el mismo fundamento.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Adrián O. Díaz Díaz

Apelante

v.                                    AC-2015-83        Apelación

Asociación de Residentes
Urb. Quintas de San Luis, Inc.

Apelada



Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 14 de octubre de 2016.

Por estar convencido de que las circunstancias de este caso requerían que nos pronunciáramos en torno a la facultad de las asociaciones de residentes para limitar, restringir, variar o condicionar la forma de acceso de un residente a su hogar, debido a la existencia de deuda por concepto de cuotas de mantenimiento, respetuosamente disiento del dictamen emitido por una Mayoría de este Tribunal. Además, este caso brindaba la oportunidad de propiciar el acceso oportuno para impugnar este tipo de reglamentación, a través

del mecanismo de la sentencia declaratoria. Aunque atendimos el recurso como una apelación ante la falta de certeza y las incongruencias de dictámenes previos de paneles del Tribunal de Apelaciones, en torno a la validez de la reglamentación, y hasta celebramos una vista oral, este Tribunal ha optado por un curso de acción contrario. Ello, ante una alegada transacción extrajudicial habida entre las partes -de la que no desfiló prueba en la vista oral celebrada ante este Tribunal- la cual aun cuando exista **no derrota la realidad procesal y adversativa que ha caracterizado a este caso desde su génesis.**

Por ello, sostengo que la controversia principal de autos sigue **viva** y **presente**; no se trata, como señala una Mayoría de este Tribunal, de adentrarse en un mundo de especulación. Así pues, debimos suplir el vacío existente en nuestro ordenamiento jurídico al determinar si las asociaciones de residentes ostentan la mencionada potestad y, por ende, adjudicar los derechos de las partes. Más aún, cuando nos encontramos ante una controversia revestida de matices constitucionales sobre el disfrute de la propiedad y de una reglamentación adoptada por un poder delegado por el Estado.

Es decir, persiste la controversia de determinar si la norma impugnada de su faz, emitida por una asociación de residentes, constituye un ejercicio legítimo. Por tanto, la deuda o pago de cuotas es **inconsecuente** para

fines de la controversia sustantiva ante nos y para pautar con certeza el derecho aplicable.

A la luz de lo anterior, veamos concretamente los antecedentes fácticos y procesales que suscitaron la controversia ante este Tribunal.

**I**

El 4 de abril de 2011, el Lcdo. Adrián O. Díaz Díaz (licenciado Díaz Díaz o apelante) presentó ante el Tribunal de Primera Instancia una demanda sobre sentencia declaratoria y una petición de entredicho preliminar y permanente, contra la Asociación de Residentes de la Urb. Quintas de San Luis (Asociación). En síntesis, impugnó la reglamentación adoptada por la Asociación para regular el proceso de instalación y operación de un nuevo mecanismo para controlar el acceso de los residentes a la urbanización. El nuevo sistema aprobado consiste en la instalación de un sello o cinta magnética que permite a los residentes abrir el portón que da acceso al área controlada. En esencia, el licenciado Díaz Díaz cuestionó la facultad de la Asociación para disponer que a los titulares que adeudasen dos o más mensualidades de cuotas de mantenimiento se les desactivará el uso del sello, restringiendo su acceso a la urbanización al sistema de *tele entry* ubicado en el área de acceso para los visitantes.

De igual forma, el licenciado Díaz Díaz alegó que el esquema reglamentario adoptado infringe el derecho de los

residentes a tener acceso libre y en igualdad de condiciones a su residencia y, por ende, a su comodidad. Esto, supuestamente en contravención con lo dispuesto en la Ley Núm. 21 de 20 de mayo de 1987 (Ley Núm. 21), conocida como *Ley de Control de Acceso*, 23 LPRA sec. 64 *et seq.* y el Reglamento Núm. 20 de la Junta de Planificación (Reglamento Núm. 20), Reglamento Núm. 3843 de 7 de febrero de 1989, conocido como *Reglamento de Control de Tránsito y Uso Público de Calles Locales*. Asimismo, adujo que cualquier acto dirigido a, o que pueda interferir con, la igualdad de acceso de los residentes a la urbanización es uno ilegal que debe cesar inmediatamente, o declararse ilegal de manera profiláctica, para evitar daños a los residentes, así como para garantizar sus derechos constitucionales.

A tales efectos, el licenciado Díaz Díaz solicitó que se emitiera una sentencia declaratoria en la cual se determinara que: (1) la Asociación está impedida de establecer condiciones que limiten o restrinjan la libertad e igualdad de acceso de los residentes a la urbanización, ya sea por concepto de deudas o cualquier otro, y (2) que el reglamento adoptado o parte de sus cláusulas son ilegales.

Luego de que las partes presentaran sendos memorandos de derecho respecto a las controversias planteadas, el 29 de abril de 2011, el licenciado Díaz Díaz instó una demanda enmendada. En ésta, impugnó la legalidad de

ciertas partidas cobradas como parte de las cuotas de mantenimiento denominadas como gastos administrativos (*administrative expenses*), por entender que también eran contrarias a la Ley Núm. 21. Así pues, solicitó que se determinara la ilegalidad de las referidas partidas y se ordenara a la Asociación detener el cobro de éstas, así como su devolución a todos los residentes que la hubiesen pagado. Por su parte, el 2 de mayo de 2011, la Asociación compareció mediante *Memorando de Derecho*. En esencia, arguyó que la reclamación presentada por el licenciado Díaz Díaz tenía el propósito de atacar colateralmente una sentencia de cobro recaída en otro pleito, la cual es final y firme.

Posteriormente, el 18 de mayo de 2011, el licenciado Díaz Díaz presentó una moción ante el foro primario mediante la cual solicitó nuevamente un entredicho preliminar y permanente. Expresó que recibió una comunicación de la Asociación convocando a los residentes a una Asamblea a celebrarse el 22 de mayo de 2011, y en la cual se advirtió que "[a]quel miembro de la Asociación que adeude más de un mes de la cuota de mantenimiento se verá privado de ejercer su derecho al voto". Apéndice del recurso de Apelación, págs. 47-48. Examinada la moción, el 20 de mayo de 2011, el foro primario emitió una Resolución mediante la cual ordenó a la Junta de Directores de la Asociación permitir a los residentes que estuviesen

atrasados en el pago de las cuotas ejercer su derecho al voto.

Tras varios incidentes procesales, el 27 de febrero de 2013, el licenciado Díaz Díaz instó una *Moción Reiterando Petición de Entredicho Provisional, Preliminar y Permanente*. Mediante ésta, señaló que para esa fecha la Asociación se encontraba operando el sistema de sellos para controlar el acceso de los residentes, por lo que él estaba obligado a utilizarlo en sus vehículos. Además, alegó que durante la semana del 18 al 22 de febrero de 2013, recibió una notificación de parte de la Asociación advirtiendo que a partir del 1 de marzo de 2013, "el sistema de AVI [sellos] de control de acceso estaría desactivando a todos aquellos asociados que no estén al día en el pago de cuota [...] o con planes de pago al día". Íd., págs. 74-75.

Resulta pertinente puntualizar que en la aludida moción el apelante adujo que la actuación propuesta por la Asociación estaba *subjudice* y, por ello, solicitó que se atendieran los argumentos planteados en su demanda original. Asimismo, expuso que recibió copia de "una moción alegando que se podía ejecutar una Sentencia en Cobro de Dinero, la cual había sido previamente declarada Nula por el Tribunal Apelativo en Sentencia en Reconsideración en el caso KLCE2010-1255, con fecha de 16 de noviembre de 2012". Íd., pág. 75. Del mismo modo, en la nota al calce número dos, expresó que hasta la fecha de la

moción él mantenía "sus pagos al día, y como cuestión de hecho y según [su] mejor entendimiento [...] no mantiene deudas con la asociación". Íd., pág. 75, n. 2.

A través de una moción presentada el 1 de marzo de 2013, la Asociación se opuso a la solicitud del licenciado Díaz Díaz. Arguyó que éste "no t[enía] legitimación para presentar la solicitud que h[izo] [a]l [t]ribunal debido a que la residencia del demandante no est[aba] incluida entre aquellas cuyo sello ser[ía] desactivado. Precisamente porque existe una controversia con respecto a la notificación en el caso de cobro de dinero [...] y así mismo tomando en consideración que el Lcdo. Díaz Díaz ha continuado pagando su cuota de mantenimiento". Íd., pág. 82.

Así las cosas, el 21 de octubre de 2014, el Tribunal de Primera Instancia emitió una *Sentencia Declaratoria Enmendada.* En lo pertinente, determinó que la Asociación no estaba impedida de establecer condiciones en cuanto al acceso a la Urb. Quintas de San Luis a aquellos titulares que adeuden cuotas de mantenimiento, tales como la desactivación de los dispositivos de acceso directo. Razonó que esa medida no era contraria a la Ley Núm. 21 ni al Reglamento Núm. 20. Con relación al mecanismo de sentencia declaratoria, señaló que "la controversia en el presente caso y así surge del expediente en este caso, es una susceptible de recurrencia, por lo que este tribunal entiende es necesario adjudicar los derechos entre las

partes, mediante una Sentencia Declaratoria". Íd., pág. 154.

Inconforme, el licenciado Díaz Díaz acudió ante al Tribunal de Apelaciones. Evaluada la controversia, el 30 de junio de 2015, el foro apelativo intermedio dictó una Sentencia en la cual confirmó el dictamen recurrido. En lo pertinente, concluyó que de las disposiciones de la Ley Núm. 21 y el Reglamento Núm. 20, "no surge prohibición alguna que le impida a la Asociación tomar medidas para asegurar el pago de las cuotas de mantenimiento, debido a que dichas medidas responden al fin ulterior de salvaguardar la seguridad y tranquilidad de la comunidad de Quintas de San Luis". Íd., pág. 172.

No obstante, cabe destacar que el Tribunal de Apelaciones se equivocó al expresar que el licenciado Díaz Díaz indicó que "la Asociación le prohibió el acceso a su hogar en igualdad de condiciones, debido a que una vez la Asociación le desactivó la cinta magnética, tuvo que identificarse con el guardia de seguridad y que esta medida es irrazonable e ilegal". Íd., pág. 171. Según surge del expediente, en ningún momento al apelante se le desactivó el sello que le permite acceder directamente al área residencial. Así lo informó el licenciado Díaz Díaz al Tribunal de Apelaciones en una *Moción de Reconsideración*. En específico, manifestó que "[t]al acción no ha ocurrido aún", por lo que deseaba "aclarar el expediente del [t]ribunal en este particular". Íd., pág.

Vista la solicitud de reconsideración instada, el foro apelativo intermedio la denegó.

En desacuerdo, el licenciado Díaz Díaz acude ante este Tribunal mediante recurso de apelación. En virtud de una Resolución emitida el 29 de enero de 2016, este Tribunal expidió el recurso presentado. Acogimos el planteamiento de que existen dictámenes conflictivos del Tribunal de Apelaciones acerca de la facultad que tienen las asociaciones de residentes para adoptar medidas adicionales a las contempladas en la Ley Núm. 21, con el fin de disuadir a los residentes a pagar oportunamente las cuotas de mantenimiento. En su recurso de apelación, el licenciado Díaz Díaz solicita, en síntesis, que revoquemos el dictamen emitido por el foro apelativo intermedio, toda vez que sostiene que al amparo de la Ley Núm. 21 y el Reglamento Núm. 20, las asociaciones de residentes no pueden limitar, restringir, variar o condicionar la forma de acceso de un residente a su hogar por la mera alegación o existencia de deudas en cuotas de mantenimiento.

Así las cosas, y tras varios trámites procesales, el 28 de junio de 2016, este Tribunal celebró una vista oral a la cual comparecieron las partes y expusieron sus argumentos. Durante la vista, salió a relucir que el licenciado Díaz Díaz y la Asociación llegaron a un acuerdo extrajudicial con relación al pago de unas partidas por concepto de cuotas de mantenimiento que éste adeudaba.

Aferrándose a esa transacción extrajudicial, de la cual no desfiló prueba durante la vista, una Mayoría de este Tribunal concluye que la controversia principal que presenta este caso ha dejado de ser real, actual y entre partes con intereses adversos, por lo que ha pasado a ser abstracta y especulativa. Ello conduce a una Mayoría de este Tribunal a determinar que la controversia no es justiciable, bajo el entendido de que se ha tornado académica. En consecuencia, no solo se ordena la desestimación de la reclamación incoada por el licenciado Díaz Díaz en este recurso, sino que se dejan sin efecto los dictámenes emitidos por los foros recurridos. No me queda más que disentir de tal proceder. Elaboro los fundamentos que me mueven a ello.

## II

En primer lugar, es preciso aclarar que en el presente caso surgieron una serie de controversias, pero no todas fueron adjudicadas por el foro primario. Entre éstas, la única resuelta mediante la *Sentencia Declaratoria Enmendada* fue el cuestionamiento de las medidas tomadas por la Asociación para desactivar el sello de los residentes morosos, obligándolos a utilizar el sistema de *tele entry*. De acuerdo a los argumentos esgrimidos por el licenciado Díaz Díaz ante **todos** los foros que han atendido el asunto, estas medidas son contrarias a lo establecido en la Ley Núm. 21 y en el Reglamento Núm. 20. Nótese que **desde la génesis de este**

**pleito** lo que ha hecho el apelante es cuestionar de su faz las disposiciones reglamentarias de la Asociación porque entiende que ésta carece de facultad para adoptar ese tipo de medidas, pues, según ha argumentado, las mismas son contrarias a nuestras leyes.

En segundo lugar, es imperativo resaltar que la reclamación instada por el licenciado Díaz Díaz no surgió como consecuencia de alguna medida tomada específicamente contra éste. Adviértase que tampoco surge del dictamen emitido por el foro primario que la impugnación de la reglamentación estuviese relacionada a alguna deuda del apelante con la Asociación. Bajo esa realidad expedimos y hasta acogimos la propuesta de celebrar una vista oral. Por ello, a diferencia de lo que dictamina una Mayoría de este Tribunal, considero que la controversia principal ante nuestra consideración no se ha tornado académica, ya que el alegado acuerdo extrajudicial alcanzado entre el licenciado Díaz Díaz y la Asociación, sobre un extremo ajeno a la controversia medular ante nos, **no derrota el tracto procesal y adversativo que ha caracterizado a este caso desde su origen.**

**A.**

Cuando el Tribunal de Primera Instancia emitió su dictamen, la Asociación ya se encontraba operando el sistema de sellos con la reglamentación objetada por el licenciado Díaz Díaz. Además, a ese momento, al apelante no se le estaba privando el acceso en igualdad de

condiciones a la urbanización. En efecto, el foro primario conocía de este hecho puesto que ambas partes **admitieron** en sus respectivas comparecencias que el licenciado Díaz Díaz estaba al día con el pago de sus cuotas de mantenimiento al momento de dictar sentencia, y que la Asociación no le había desactivado el sello que le permitía acceder a la urbanización. Esto, atado al hecho de que la impugnación del cobro de la partida de gastos administrativos no fue la razón para solicitar que se declarase ilegal la disposición reglamentaria que permite desactivar los sellos a los titulares morosos, hacen que la doctrina de academicidad sea **inaplicable** en el presente caso.

Los alegados cambios acaecidos son **inconsecuentes** para propósitos de resolver la controversia principal que versa sobre la facultad de la Asociación para adoptar la reglamentación impugnada. A todas luces, la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente **es la misma**. Ello es así debido a que hoy día, **al igual que al momento en que se emitió la** *Sentencia Declaratoria Enmendada*, el licenciado Díaz Díaz no adeuda cuotas de mantenimiento y no se le está restringiendo el acceso al área residencial en igualdad de condiciones. Por tanto, este Tribunal no debió desviarse de su curso de acción al toparse con un acuerdo al cual le adscribe un alcance erróneo, por lo que procedía brindar certeza y resolver la controversia

principal traída ante nos; esto es: la facultad de las asociaciones de residentes para limitar, restringir, variar o condicionar la forma de acceso de un residente que adeude cuotas de mantenimiento.

**B.**

Sabido es que la Ley Núm. 21 "delega poder tanto a los municipios como a las asociaciones de residentes para poner en vigor la legislación". Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 DPR 1, 26 (1997). Empero, este Tribunal resolvió que la referida ley "no establece criterios específicos que guíen a las asociaciones respecto a la amplitud del poder delegado". Íd. Ante esa realidad, y tratándose de una delegación a un ente privado, ¿por qué este Tribunal opta por postergar la resolución de la controversia trabada? Si nuestro deber es definir los contornos del ejercicio de los poderes y facultades exclusivas de cada rama del Gobierno, ¿cuánto más no deberíamos intervenir para definir los parámetros del ejercicio del poder delegado a un ente privado, cuando hemos reconocido que los criterios específicos que delimitan tal poder no están claramente establecidos en la ley?

Soy del criterio que el cuadro fáctico de este caso, nos brindaba la oportunidad de cumplir nuestra obligación de pautar el derecho aplicable en estas circunstancias. Es más, la necesidad de emitir una expresión al respecto se torna imperativa si consideramos que expedimos el recurso

precisamente por el estado de derecho incierto que producen dos sentencias conflictivas emitidas por el Tribunal de Apelaciones.

Conforme señalé, surge de los autos que el Tribunal de Primera Instancia resolvió que el mecanismo de sentencia declaratoria en el presente caso era adecuado para aquilatar el planteamiento del licenciado Díaz Díaz. Específicamente, el foro primario concluyó que la controversia en el presente caso es una susceptible de recurrencia, por lo cual entendió que era necesario adjudicar los derechos de las partes mediante sentencia declaratoria. Ante las circunstancias particulares de este caso, opino que el Tribunal de Primera Instancia actuó correctamente al utilizar el aludido mecanismo. Esa actuación fue confirmada por el foro apelativo intermedio.

Como es sabido, nuestro ordenamiento procesal le concede a los tribunales autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. *Véase* Regla 59.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 59.1. Al ser miembro de la Asociación, el licenciado Díaz Díaz quedó vinculado y afectado por los Reglamentos aprobados e implementados por ésta. Por su parte, la Asociación, como corporación sin fines de lucro organizada al amparo de nuestras leyes, está impedida de adoptar reglamentos contrarios a la ley, el orden público, o a lo establecido en su certificado de incorporación. *Véase*, por ejemplo,

Art. 1.08(b) de la Ley Núm. 164-2009, conocida como *Ley General de Corporaciones de Puerto Rico*, 14 LPRA sec. 3508(b). Precisamente, esto fue lo que planteó el licenciado Díaz Díaz en su reclamación.

Por tanto, tal y como razonaron los foros recurridos, entiendo que contamos con herramientas adecuadas -como lo es el mecanismo de la sentencia declaratoria- para disponer de la controversia de autos. Máxime, cuando nuestro ordenamiento procesal civil contempla que los contratos pueden ser "interpretado[s] **antes o después** de haber sido infringido[s]". *Véase* Regla 59.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 59.2. (Énfasis suplido).

Ante ese cuadro, resolver que este caso no puede atenderse debido a que el apelante no está en riesgo de ser afectado por las disposiciones reglamentarias que impugnó sería contrario a las reglas procesales que expresamente lo permiten. Además, resolver así tendría el peligroso efecto de fomentar el incumplimiento de aquellas obligaciones cuya legalidad no está clara, antes de acudir al foro judicial. Sin duda, ello da al traste con el propósito de las Reglas de Procedimiento Civil de 2009, en tanto se condiciona el acceso a los tribunales al incumplimiento de una obligación, y no se promueve "una solución justa, rápida y económica de todo procedimiento". *Véase* Regla 1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 1.

Hoy resulta necesario cuestionar, ¿por qué utilizar nuestra tinta para restringir los mecanismos especiales que el legislador expresamente contempló? En el caso ante nos, se ignora la herramienta disponible de la sentencia declaratoria para atender una controversia que motivó hasta una vista oral. Adjudicar esta controversia no usurparía los poderes de las otras ramas de Gobierno, por lo que autolimitarnos no abona en este caso a fomentar soluciones justas, rápidas y económicas. Peor aún, la doctrina de justiciabilidad llevada a su grado más rígido conduce al absurdo de permitir a un tercero visitante impugnar de su faz una reglamentación de control de acceso, pero a un propietario no. ¿Acaso una controversia sobre igualdad de acceso y libertad relacionada con el poder de reglamentación tiene que estar inexorablemente atada a asuntos económicos? A mi juicio, no.

En fin, considero que el licenciado Díaz Díaz está legitimado para impugnar el Reglamento que **permite** a la Asociación desactivar el mecanismo que le da acceso directo a los residentes a sus respectivos hogares. El hecho de que esta disposición reglamentaria no haya sido aplicada al apelante no es óbice para que este Tribunal se exprese en torno a la potestad de la Asociación de adoptar dichas medidas. Máxime, ante los dictámenes contradictorios que ha emitido el Tribunal de Apelaciones en torno a este asunto. Y más aún, ante una controversia

matizada por el derecho constitucional al disfrute de la propiedad.

Como una Mayoría de este Tribunal opta por dilatar innecesariamente la solución de la controversia de epígrafe y mantener una incertidumbre jurídica en nuestro ordenamiento, disiento.

### III

Considerando lo anterior, procedo a disponer de la controversia sustantiva que presenta este caso desde el ámbito de la disidencia. Esto es, paso a responder la siguiente interrogante: ¿pueden las asociaciones de residentes -conforme a la Ley Núm. 21, el Reglamento Núm. 20 o bajo cualquier otra disposición legal de nuestro ordenamiento- limitar, restringir, variar o condicionar la forma de acceso, incluyendo la desactivación de los dispositivos electrónicos de entrada automática (*beepers* o sellos), de los residentes que adeuden pagos por concepto de cuotas de mantenimiento? Veamos.

Como es conocido, la Asamblea Legislativa aprobó la Ley Núm. 21 como una medida para, entre otros asuntos, lidiar con el problema de la criminalidad en Puerto Rico. *Véase* Exposición de Motivos de la Ley Núm. 21 de 20 de mayo de 1987 (1987 Leyes de Puerto Rico 67). De esta forma, la ley permite que los vecinos de una comunidad se organicen como una asociación de residentes y soliciten al municipio un permiso para establecer mecanismos que permitan controlar la entrada de vehículos a las calles

dentro del área residencial. Al amparo de esta ley, la asociación de residentes debe organizarse como una corporación sin fines de lucro y una vez aprobado el permiso que emite el municipio, queda facultada para administrar y mantener el control de acceso. Para llevar a cabo sus funciones, se faculta a la asociación de residentes para imponer y cobrar "una cuota para cubrir los costos y gastos de instalación, operación y mantenimiento del sistema de control de acceso, incluyendo los salarios o jornales del personal contratado". 23 LPRA sec. 64d-3(a). La obligación de pagar estas cuotas recae, entre otros, sobre todo titular de una finca ubicada en una urbanización que ha sido autorizada por el municipio correspondiente para controlar el acceso. 23 LPRA sec. 64d-3(a)(3).

Con el fin de asegurar el funcionamiento continuo del sistema de control de acceso, el legislador incluyó una serie de protecciones que facilitan el cobro de estas cuotas. A tales efectos, la ley permite que la asociación de residentes acuda a los foros judiciales a reclamarle el pago de las cuotas al propietario moroso a quien, además, podrá requerirle las costas y honorarios en los que incurra durante el pleito. 23 LPRA sec. 64d-3(b). Cuando el residente adeuda tres o más mensualidades consecutivas, se impone una penalidad adicional de uno por ciento mensual del total de la deuda. Íd. Además, entre las medidas que autoriza el estatuto, se encuentra la

AC-2015-83                                                          19

confiscación de pagos por arrendamiento. Es decir, cuando la asociación de residentes lleva una reclamación de cobro de cuotas de mantenimiento contra un titular que arrienda su propiedad, la ley permite que el tribunal ordene al arrendatario consignar judicialmente los cánones de arrendamiento hasta que se cubra totalmente la deuda. Íd.

Como se puede apreciar, el legislador dispuso una serie de facultades y remedios para que la asociación de residentes tuviese financiamiento disponible para operar y administrar el sistema de control de acceso. Esto lleva a cuestionar si los remedios y facultades que dispone la Ley Núm. 21 para facilitar el cobro de las cuotas de mantenimiento son los únicos disponibles para la asociación de residentes o si, por el contrario, ésta tiene autoridad para adoptar otras medidas disuasivas o preventivas contra los titulares morosos. Como vimos, el licenciado Díaz Díaz arguye que la Ley Núm. 21 le impide a la Asociación tomar medidas que alteren la manera en que se le permite acceder al área controlada a los titulares morosos. Elaboremos en torno a ello.

**A.**

En 1988, se enmendó la Ley Núm. 21 y, en lo pertinente, se ratificó la importancia del sistema de acceso controlado como una herramienta de participación de la comunidad en la lucha contra el crimen. A tales efectos, en la *Exposición de Motivos* se expresó que:

[P]ara hacer efectiva esa participación es

necesario que se propicie un método de financiamiento para que sea factible establecer el control de acceso y mantenerlo funcionando. Con este fin se establece un sistema de cuotas por el cual los propios residentes financiarán el control de acceso. **Ese sistema se establecerá inicialmente sobre bases voluntarias** pero para que sea eficaz se autoriza a que se pueda constituir como un gravamen real sobre el inmueble en el que se inscriba el gravamen como carga en el registro de la propiedad. **Este procedimiento garantizará continuidad del sistema una vez establecido.** *Véase* Exposición de Motivos de la Ley Núm. 156 de 10 de agosto de 1988 (1988 Leyes de Puerto Rico 724). (Énfasis suplido).

Con posterioridad, en 1992, la Ley Núm. 21 se enmendó nuevamente y, en síntesis, se reafirmó que para hacer efectiva la "participación comunitaria es necesario que se propicie un método de financiamiento para que sea factible establecer el control de acceso y mantenerlo en funcionamiento". *Véase* Exposición de Motivos de la Ley Núm. 22 de 16 de julio de 1992 (1992 (Parte I) Leyes de Puerto Rico 141). Precisamente, allí fue que el legislador introdujo la oración de la Sec. 15 que establece que "[t]odo propietario o residente tendrá acceso al área sujeta al control de acceso en igualdad de condiciones". *Véase* 23 LPRA sec. 64g. Un análisis integral de las enmiendas revela dos cuestiones medulares para la interpretación de la Ley Núm. 21. En primer lugar, el legislador está consciente de que sin un financiamiento adecuado el sistema de control de acceso fracasaría y con ello se derrotaría el propósito de la Ley Núm. 21.

En segundo lugar, nótese que inicialmente el sistema se instala sobre bases voluntarias. Es decir, la Ley Núm.

21 requiere que al menos tres cuartas partes de los propietarios adopten la autorización que otorga el municipio para instalar el sistema de control de acceso. 23 LPRA sec. 64a(c). De esta manera, podría darse el caso de que el 25% de los propietarios en determinada urbanización vengan obligados a utilizar un sistema para controlar el acceso a las calles donde ubican sus residencias con el cual no estuvieron de acuerdo. La Ley Núm. 21 protege a estos opositores eximiéndolos de la obligación de tener que aportar económicamente al financiamiento del sistema, precisamente porque el mismo se establece sobre bases voluntarias. Para proteger el libre ejercicio de esta voluntad, el legislador se aseguró de que la asociación de residentes no pudiese poner trabas en la manera en que los opositores utilizan el sistema que les permite acceder a las calles donde ubican sus residencias, por el mero hecho de haber ejercido su derecho a oponerse.

En el caso <u>Caquías v. Asoc. Res. Mansiones Río Piedras</u>, 134 DPR 181 (1993), este Tribunal examinó la facultad de la asociación de residentes para establecer diferentes mecanismos de acceso a la urbanización para los propietarios opositores. Tras analizar las protecciones que brinda la Ley Núm. 21 a los titulares opositores en las Secs. 10(a) y 15, este Tribunal señaló que el efecto neto de estas salvaguardas es que los vecinos que se opongan al sistema de control de acceso tendrán los mismos derechos que los vecinos que hayan apoyado el sistema y que

contribuyan económicamente a su mantenimiento. Íd., pág. 212. Aunque lo anterior pudiese parecer injusto para aquellos residentes que apoyan la gestión, este Tribunal reconoció que era el balance que el legislador estimó adecuado para proteger los intereses en conflicto. Íd.

Adviértase que los intereses en conflicto son los de unos propietarios que no autorizan un sistema que controle la manera en que acceden a su comunidad, y a quienes nadie les advirtió que tal sistema podría instalarse en la misma, *versus* los intereses de quienes desean disfrutar de los beneficios del control de acceso. En este balance de intereses no se encuentran los de aquellos propietarios que adquirieron una propiedad en una urbanización conociendo que allí opera un sistema de control de acceso, que fue autorizado por el municipio y avalado por la mayoría de los propietarios. Respecto a este tipo de titular, la Ley Núm. 21 dispone que vendrá obligado a pagar las cuotas de mantenimiento. 23 LPRA sec. 64d-3(a)(3).

De otra parte, en el caso <u>Residentes Sagrado Corazón v. Arsuaga</u>, 160 DPR 289 (2003), este Tribunal se enfrentó a la controversia en torno a si la autorización de un ex cónyuge para que se instale el sistema de control de acceso en una urbanización, vincula al ex cónyuge que no reside en la propiedad y que no suscribió la autorización. En ese caso, la controversia versaba sobre una residencia que pertenecía a ambos ex cónyuges como miembros de la comunidad de bienes post ganancial. Luego de analizar la Sec. 15 de la Ley Núm.

21 y la Sec. 10.01 del Reglamento Núm. 20, este Tribunal expresó que éstas "consagran el derecho de los residentes a oponerse al control de acceso". Íd., pág. 302. El derecho de estos titulares a oponerse implica que:

> [N]o están obligados a pagar las correspondientes cuotas para el establecimiento, operación, mantenimiento o remoción del sistema. Tampoco están obligados a pertenecer a la asociación de residentes, aunque sí tienen voz y voto en las reuniones que ésta celebre. Además, tienen derecho de acceso al área controlada bajo las mismas condiciones que los residentes que hayan favorecido el control de acceso. Íd. (Citas omitidas).

Un análisis de los pronunciamientos jurisprudenciales de este Tribunal revela que la interpretación de la Sec. 15 de la Ley Núm. 21 se ha limitado a salvaguardar esa base voluntaria sobre la cual se erige inicialmente el sistema de control de acceso y que prevaleció en el balance de intereses que realizó el legislador. Así pues, no se ha interpretado que la protección de acceso en igualdad de condiciones se extiende a aquellos titulares que sí consintieron al sistema de control de acceso. Hacerlo no equivaldría a una igualdad real, porque ignoraría la necesidad de equiparar a todos los titulares que consintieron a una misma igualdad de obligaciones, cuyo incumplimiento conlleva consecuencias jurídicas.

**B.**

A base de lo que antecede, entiendo que la protección contenida en la Sec. 15 de la Ley Núm. 21 no puede invocarse para prohibirle a la Asociación limitar,

restringir, variar o condicionar la forma de acceso de los residentes morosos que vienen obligados a pagar las cuotas. Ello pues, la garantía de acceso en igualdad de condiciones protege a quienes oportunamente se opusieron a la instalación de un sistema de control de acceso que no existía al momento en que adquirieron su propiedad. En este contexto, el propietario que adviene titular de una propiedad en una urbanización conociendo que allí opera un sistema de control de acceso, no puede ser un opositor a un sistema autorizado por el municipio y avalado por la mayoría calificada de los propietarios. Por lo tanto, es forzoso concluir que la protección dispuesta en la Sec. 15 no le aplica.

Si bien es cierto que el texto de la citada Sec. 15 dispone que todo propietario tendrá acceso en igualdad de condiciones, considero que una aplicación literal de esta disposición a la controversia de autos llevaría a un resultado contrario a la verdadera intención del legislador e ignoraría la igualdad de obligaciones de los titulares que voluntariamente consintieron, base esencial para el sostenimiento del sistema de control de acceso. Permitirle a un titular que incumpla con el pago de las cuotas que aseguran el funcionamiento continuo del sistema al cual consintió aportar, sería desvirtuar el propósito de esta protección. Tras analizar la jurisprudencia aplicable y el historial legislativo de la Sec. 15, soy del criterio que ese no fue el balance que nuestro legislador estimó

adecuado para proteger los intereses en conflicto.

Por otro lado, sabido es que, como mencioné, la asociación de residentes tiene facultad para aprobar reglamentos o estatutos internos al ser una entidad a la cual la Asamblea Legislativa delegó poder para poner en vigor la Ley Núm. 15. Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, *supra*, pág. 26. No obstante, esa ley no establece claramente el límite del poder de reglamentación que tiene la asociación de residentes. Íd. Ahora bien, cabe señalar que en lo que atañe a la manera en que ésta regula el acceso de *terceros* al área controlada este Tribunal señaló que:

> Los reglamentos que se aprueben en virtud del poder delegado no pueden resultar **onerosos ni irrazonables.** Éstos deben limitarse al mínimo necesario de restricciones a los derechos de terceros, sin olvidar que lo único que autoriza la ley es **controlar** el tráfico de vehículos de motor y el uso público de ciertas vías públicas residenciales.

> [...]

> La delegación efectuada por la Legislatura a las asociaciones de residentes es limitada y debe interpretarse conforme al ordenamiento vigente y al propósito de la ley de proveerle a la ciudadanía un instrumento para prevenir el crimen en sus hogares y vecindarios, teniendo presente la naturaleza de los bienes involucrados y los derechos constitucionales de todas las partes afectadas. Íd., pág. 28. (Énfasis suplido).

Como hemos visto, el legislador tuvo la preocupación de que las medidas que provee la Ley Núm. 21 serían insuficientes para asegurar el cobro de las cuotas de mantenimiento. En efecto, el historial legislativo de las enmiendas a la Ley Núm. 21 demuestra que el legislador no

estaba ajeno a la opción de facultar al cuerpo de propietarios o residentes para que tomasen medidas internas dirigidas a disuadir a los propietarios morosos al pago de las cuotas de mantenimiento. No obstante nada dispuso en cuanto al particular.

En ese sentido, considero que la Ley Núm. 21 tiene una laguna parecida a la que intentó suplir este Tribunal en el caso Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, *supra*, con la diferencia de que en el caso de autos se trata de regular el acceso de los propietarios que consintieron a la instalación del sistema y que han incumplido su obligación de aportar a su financiamiento. Ante ese vacío, opino que "corresponde a los tribunales examinar cuidadosamente, caso a caso, la implantación de la ley para evitar que se establezcan controles de acceso que rebasen los poderes delegados o que se autoricen para otros propósitos que no sean los contenidos en la ley". Íd., pág. 34.

Así pues, resulta pertinente el precedente de Maldonado v. Consejo de Titulares, 111 DPR 427 (1981), puesto que allí surgió una controversia análoga a la del presente caso en el contexto del Régimen de Propiedad Horizontal. Sin pretender equiparar el elemento común necesario en un condominio con el sistema de seguridad que controla el acceso vehicular en una urbanización, lo cierto es que ambas figuras sirven al disfrute y protección de la propiedad. En gran medida, el cumplimiento del propósito de los estatutos que regulan ambos sistemas depende,

respectivamente, del buen funcionamiento de los elementos comunes y del sistema que permite controlar el acceso al área residencial. El legislador reconoció que para el funcionamiento continuo del sistema de control de acceso es necesario una fuente de financiamiento que permita mantenerlo y administrarlo.

Precisamente, eso fue lo que consideró este Tribunal en Maldonado v. Consejo de Titulares, *supra*, al expresar que las cuotas que los titulares vienen obligados a satisfacer son para garantizar el buen funcionamiento del régimen. Íd., pág. 430. Ante esa realidad, allí razonamos que el Consejo de Titulares de un condominio tiene la autoridad implícita para adoptar medidas que propendan a la preservación y funcionamiento del régimen. Por ello, similar a lo indicado por este Tribunal en Maldonado v. Consejo de Titulares, *supra*, entiendo que siempre y cuando las medidas adoptadas por la asociación de residentes **sean razonables, no sean onerosas ni contrarias a la ley, la moral o al orden público, y propendan al cumplimiento de la política pública involucrada en la Ley Núm. 21,** éstas no deben vetarse por el hecho de que el legislador no las contempló específicamente en la legislación. Íd., págs. 432 y 433.

En fin, si bien nuestro ordenamiento jurídico no autoriza expresamente a las asociaciones de residentes para limitar, restringir, condicionar o variar el acceso de los titulares morosos al área controlada, lo cierto es que

están expresamente facultadas para administrar y mantener el control de acceso y para adoptar reglamentos a ese fin. Claro está, los reglamentos o estatutos que se aprueben en virtud del poder delegado **no pueden resultar onerosos ni irrazonables; además, el ámbito de su aplicación debe estar restringido por el ordenamiento vigente y por el propósito de la Ley Núm. 21** de proveerle a la ciudadanía un instrumento para prevenir el crimen en sus hogares y vecindarios, teniendo presente la naturaleza de los bienes involucrados y los derechos las partes afectadas. *Véase* Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, *supra*, pág. 28.

En el caso de epígrafe, opino que **no resulta oneroso ni irrazonable** disponer, mediante reglamentación interna, que a los titulares que adeuden pagos por concepto de cuotas de mantenimiento se les desactive el mecanismo de acceso directo a la urbanización y tengan que utilizar el área de acceso para visitantes. Sin embargo, sostengo que la forma alternativa de acceso a la urbanización **no puede representar una carga onerosa para el titular moroso y sólo deberá ir dirigida a fomentar el pago oportuno de las cuotas que permiten el funcionamiento continuo del sistema.** Considero que en estas circunstancias particulares ese es el balance adecuado para salvaguardar los intereses y derechos en pugna.

**IV**

Por los fundamentos que anteceden, disiento del dictamen emitido por una Mayoría de este Tribunal. En su

lugar, y en armonía con nuestra obligación de pautar el derecho e imprimirle la mayor certeza posible, hubiese examinado y resuelto en sus méritos la controversia sustantiva de derecho que presenta este caso y confirmado a los foros recurridos.


                                Luis F. Estrella Martínez
                                     Juez Asociado