ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| OCTAVIO ALEQUIN VALLES Y OTROS<br><br>Apelantes<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Apelados | KLAN202300816 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm.: SJ2022CV10404<br><br>Sobre: Sentencia declaratoria; debido proceso de ley; igual protección de las leyes |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz y la jueza Mateu Meléndez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 31 de octubre de 2023.

Comparece el señor Octavio Alequín Valles y otros policías jubilados, en adelante el señor Alequín, en conjunto los apelantes, y solicitan que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI. Mediante la misma, el TPI desestimó una demanda en la que se solicita que se declare la inconstitucionalidad de la *Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos*, en adelante la Ley Núm. 80-2020, contra el Negociado de la Policía del Gobierno de Puerto Rico, en adelante el Estado, y contra la Junta de Retiro del Gobierno de Puerto Rico, en adelante la Junta de Retiro, en conjunto los apelados.

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

-I-

Los apelantes presentaron una *Demanda* sobre sentencia declaratoria, debido proceso de ley e igual protección de las leyes, contra el Estado.[1] Solicitaron que se declarara inconstitucional la Ley Núm. 80-2020. En síntesis, el señor Alequín y los demás policías jubilados arguyeron que la Ley Núm. 80-2020 los discrimina por haberse jubilado antes de 2020. Adujeron que los policías que se retiran posterior al 2020 recibirán una pensión que representa el cincuenta porciento de sus salarios, mientras los apelantes reciben una pensión entre el treinta y cuarenta por ciento de sus salarios.

Por su parte, el Estado presentó una *Moción de Desestimación* en la que alegó que los apelantes no tienen legitimación activa para instar la causa de acción y que la controversia se tornó académica porque el Tribunal Federal de Puerto Rico dejó sin efecto la Ley Núm. 80-2020.[2]

En desacuerdo, los apelantes presentaron una *Moción en Oposición a Moción de Desestimación*.[3] Arguyeron que, de conformidad con las Reglas de Procedimiento Civil y su jurisprudencia interpretativa, el TPI no podía desestimar la demanda porque debía tomar las alegaciones como ciertas. En cambio, sostuvieron que procedía emitir una sentencia declaratoria.

---

[1] Apéndice de los apelantes, págs. 303-309.
[2] *Id.*, págs. 222-248.
[3] *Id.*, págs. 215-220.

Posteriormente, la Junta de Retiro presentó una *Moción Solicitando la Desestimación*, mediante la que también argumentó la academicidad de la controversia.[4] Además, adujo que la Ley Núm. 80-2020 no aplica a los empleados en el sistema de rango, clasificación a la que pertenecen los apelantes.

Así pues, inconformes, los apelantes presentaron una *Moción en Oposición a Moción de Desestimación de la Junta de Retiro*, mediante la cual reiteraron los argumentos en su oposición a la moción de desestimación presentada por el Estado.[5]

Evaluadas las solicitudes de las partes, el TPI declaró no ha lugar las mociones de desestimación presentadas por el Estado y por la Junta de Retiro.[6]

Nuevamente inconforme, el Estado presentó una *Moción de Reconsideración* en la que reiteró su posición respecto a la falta de legitimación activa de los apelantes y añadió que el mecanismo de sentencia declaratoria no procede porque no existe una incertidumbre jurídica.[7]

También, la Junta de Retiro presentó una *Moción de Reconsideración*, en la que argumentó que el TPI no cuenta con jurisdicción para resolver la acción instada debido a la doctrina de campo ocupado.[8] Del mismo modo, arguyó que las alegaciones de la *Demanda* son insuficientes y no justifican la concesión de un derecho por las siguientes razones: (1) la Ley de Retiro [Ley Núm. 80-2020] no les aplica a los miembros de la Policía y (2) la Junta de Retiro no ha violado

---

[4] *Id.*, págs. 201-214.
[5] *Id.*, págs. 193-198.
[6] *Id.*, pág. 192.
[7] *Id.*, págs. 87-191.
[8] *Id.*, págs. 51-61.

la ley, ni ha discriminado en contra de la parte demandante debido a que esta no tiene autoridad para disminuir o legislar pensiones para los retirados.

Por otro lado, los apelantes presentaron una *Moción en Oposición a Moción de Reconsideración de Entrada Número 34 Codemandada Junta de Retiro*, mediante la que afirmaron que la doctrina de campo ocupado no aplica al pleito de epígrafe, por tratarse de una cuestión puramente estatal.[9] Además, reiteraron sus planteamientos previos y añadieron que tienen legitimación activa, debido a que los daños son reales, palpables, no hipotéticos.

Con el beneficio de la comparecencia de ambas partes, el TPI resolvió lo siguiente:

[…]

Luego de un [*sic.*] analizar el expediente del caso de epígrafe, resulta claro que la parte demandante no cumple con los requisitos de legitimación activa. En primer lugar, la parte demandante no ha sufrido un daño claro, palpable y real, sino todo lo contrario. Los alegados daños son hipotéticos y abstractos. Lo anterior se debe a que el Tribunal Federal de Puerto Rico declaró inválida la Ley de Retiro por ser incompatible con el Plan Fiscal y las disposiciones de la Ley PROMESA. Consecuentemente, de la parte demandante sufrir algún daño por la disminución en las cuantías de sus pensiones de retiro, dichos daños no tienen ningún tipo de conexión con la Ley de Retiro y la causa de acción ante nuestra consideración.

[…]

[L]a JSF inició un proceso ante el Tribunal Federal de Puerto Rico, en el cual solicitó que se invalidara, entre otras, la Ley de Retiro, *supra*. Según surge del expediente, el 28 de diciembre de 2021, el Tribunal Federal de Puerto Rico emitió un documento intitulado: Stipulation and Order Resolving Oversight Board Complaint Dated December 20, 2021 Concerning Act 80-2020, 81-2020, and 82-2020 and Joint Resolution 33-2021. En la pág. 4 del mencionado documento el Tribunal Federal de Puerto Rico aprobó la solicitud de la JSF e invalidó la Ley de Retiro, supra, la Ley Núm. 81-2020, la Ley Núm. 82-2020 y la Resolución Conjunta Núm. 33.

---

[9] *Id.*, págs. 39-45.

[…]

[R]esulta forzoso concluir que la controversia de epígrafe se tornó académica. Esto se debe a la declaración de invalidez de la Ley de Retiro, *supra*, por parte del Tribunal Federal de Puerto Rico. Por todo lo anterior, este tribunal carece de jurisdicción para atender la controversia de epígrafe.[10]

Insatisfechos con dicha determinación, los apelantes presentaron una *Apelación* en la que alegan que el TPI incurrió en los siguientes errores:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA EL ESTADO LIBRE ASOCIADO Y EL NEGOCIADO DE LA POLICÍA DE PUERTO RICO BASADA EN QUE LOS DEMANDANTES NO TIENE [*SIC*.] LEGITIMACIÓN OR [*SIC*.] STANDING EN EL PRESENTE CASO.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA LA JUNTA DE RETIRO POR ALEGADAMENTE ESTAR EL CAMPO OCUPADO POR LA JUNTA DE CONTROL FISCAL.

Examinados los escritos de las partes, el expediente y la prueba documental, estamos en posición de resolver.

**-II-**

La jurisdicción, fuente principal de la autoridad de los tribunales para interpretar y hacer cumplir las leyes, está regulada por la aplicación de diversas doctrinas que dan lugar al principio de la justiciabilidad, a saber: la legitimación activa, **la academicidad** y la cuestión política. Como corolario de lo anterior, previo a la evaluación de los méritos de un caso, los tribunales debemos determinar si la controversia ante nuestra consideración es justiciable.[11] Esto obedece a que los tribunales sólo tenemos facultad para resolver controversias genuinas dentro de una situación adversativa en la cual las

---

[10] *Id.*, págs. 25-32.
[11] *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022); *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 766 (2016); *Díaz Díaz v. Asoc. Res. Quintas San Luis*, 196 DPR 573, 577 (2016).

partes tengan un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas.[12]

En lo aquí pertinente, la doctrina de academicidad "constituye una de las manifestaciones concretas del concepto de justiciabilidad, que a su vez acota los límites de la función judicial".[13] Así pues, un caso se torna académico cuando en el mismo se trata de obtener un fallo sobre una controversia inexistente, o una sentencia sobre un asunto el cual, por alguna razón, no podrá tener efectos prácticos.[14] Así mismo, una controversia que en sus inicios era justiciable se puede convertir académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial tornan ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos de derecho.[15] Consecuentemente, la doctrina en cuestión "requiere que durante todas las etapas de un procedimiento adversativo, incluso la etapa de apelación o revisión, exista una controversia genuina entre las partes".[16]

No obstante, se han reconocido varias excepciones a la doctrina de academicidad, a saber: (1) cuando se plantea una cuestión recurrente que por su naturaleza se hace muy difícil dilucidarla nuevamente en los tribunales; (2) si la situación de hechos ha sido modificada por el demandado, pero no tiene

---

[12] *Hernández, Santa v. Srio. de Hacienda*, supra; *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009); *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 370 (2002).
[13] *Pueblo v. Ramos Santos*, 138 DPR 810, 824 (1995).
[14] *Super Asphalt v AFI y otro*, 206 DPR 803, 816 (2021); *San Gerónimo Caribe Project v. ARPe*, 174 DPR 640, 652 (2008); *RBR Const., SE v. AC*, 149 DPR 836, 846 (1999).
[15] *Super Asphalt v AFI y otro*, supra; *PPD v. Gobernador I*, 139 DPR 643, 675-676 (1995). Véase, además, *Pueblo v. Díaz, Rivera*, 204 DPR 472, 481 (2020).
[16] *Pueblo v. Ramos Santos*, supra, pág. 824. Véase, además, *Hernández, Santa v. Srio. de Hacienda*, supra.

características de permanencia; (3) cuando los aspectos de la controversia aparentan ser académicos, pero no lo son porque persisten consecuencias colaterales; (4) cuando el tribunal ha certificado un pleito de clase y la controversia se tornó académica para un miembro de la clase, mas no para el representante de la misma.[17]

Finalmente, una vez un tribunal determina que un caso es académico, por imperativo constitucional (ausencia de 'caso o controversia') o por motivo de autolimitación judicial, debe abstenerse de considerarlo en sus méritos.[18]

**-III-**

Los apelantes reiteran que, aun cuando la Ley Núm. 80-2020 fue "anulada", tienen legitimación activa para presentar la causa de acción de epígrafe. Aducen que "la esencia de la controversia sigue siendo que el gobierno ha seguido reduciendo el porciento del salario de los Policías que comenzaron sus labores en 1987 a sustancialmente menos del 50% mientras los Policías que comenzaron los años posteriores se les paga el 50% de su salario". En su opinión, esta distinción constituye un discrimen bajo la cláusula constitucional que garantiza la igual protección de las leyes. A su vez, alegan que no procede invocar la doctrina de campo ocupado porque la Junta de Supervisión Fiscal "no aprueba proyectos ni los convierte en ley". Del mismo modo, difieren con la apreciación del TPI en cuanto a los daños reclamados;

---

[17] *Pueblo v. Díaz, Rivera*, *supra*, pág. 482; *Bathia Gautier v. Gobernador*, 199 DPR 59, 73-74 (2017).
[18] *Super Asphalt v AFI y otro*, *supra*; *Pueblo v. Díaz, Rivera*, *supra*; *San Antonio Maritime v. PR Cement Co.*, 153 DPR 374, 387 (2001).

a su juicio, recibir "sustancialmente menos dinero en sus cheques [de retiro]… no tiene nada de abstracto ni hipotético".

Sin embargo, el Estado arguye que el alegado trato discriminatorio es ficticio porque, conforme al artículo 5 de la Ley Núm. 80-2020, el estatuto no aplica a los integrantes de la policía, independientemente de la fecha de su retiro. Así pues, afirma que los apelantes no tienen legitimación activa, ni sufren un perjuicio claro, palpable, inmediato y preciso. Finalmente, argumenta que los tribunales estatales carecen de jurisdicción para adjudicar controversias sobre la aplicación e implantación de la Ley Núm. 80-2020, por ser la Sala de Título III el foro con autoridad exclusiva. Por lo tanto, alega que, en tanto el Congreso de los Estados Unidos, al palio de PROMESA, facultó a la Junta de Supervisión Fiscal para garantizar que la promulgación o aplicación de las leyes estatales no afecte el Plan Fiscal, es PROMESA el estatuto que ocupa el campo ante la Ley Núm. 80-2020.

Por su parte, así como el Estado, la Junta de Retiro argumenta que el pleito de epígrafe es académico porque el Tribunal Federal de Puerto Rico invalidó la Ley Núm. 80-2020, por ser contraria a los propósitos del Plan Fiscal de Puerto Rico, en virtud de PROMESA. Además, coincide en que los apelantes carecen de legitimación activa y en que no existe un nexo entre la acción instada por los promoventes y los daños reclamados.

A los efectos del resultado alcanzado, basta considerar uno de los fundamentos en que se basó el

TPI para emitir la *Sentencia* apelada, a saber: que la controversia en el pleito de epígrafe se tornó académica. Veamos.

En la medida en que el Tribunal Federal de Puerto Rico invalidó la Ley Núm. 80-2020, por ser inconsistente con PROMESA, no existe controversia genuina ni un interés real de obtener un remedio que haya de afectar las relaciones jurídicas de las partes. Así pues, tampoco existe conexión entre la disminución de la cuantía en las pensiones de retiro y la Ley Núm. 80-2020, por lo que los daños alegados son hipotéticos y abstractos, en el contexto del pleito de epígrafe. Bajo este supuesto, cualquier declaración judicial sería una opinión consultiva sobre asuntos de derecho carente de eficacia práctica alguna. En síntesis, la controversia ante nuestra consideración es académica y como consecuencia, carecemos de jurisdicción para atenderla en sus méritos.

**-IV-**

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                                Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones