Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO en representación de U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CSMC 2007-5 Y EL CONSEJO DE TITULARES DEL CONDOMINIO RÍO MAR VILLAGE<br><br>Apelantes<br><br>v.<br><br>JOHN DOE<br><br>Apelado | TA2026AP00048 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de FAJARDO<br><br>Caso Núm.:<br>TA2025CV000639<br><br>Sobre:<br>Sentencia Declaratoria |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparecen ante nos el Banco Popular de Puerto Rico, en representación de U.S. Bank National Association *as Trustee for CSMC 2007-5* (Banco Popular), y el Consejo de Titulares del Condominio Río Mar Village (Consejo de Titulares) (en conjunto, apelantes), y nos solicitan que revoquemos la *Sentencia*, emitida y notificada el 1 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI).[1] En el aludido dictamen, el TPI desestimó la causa de acción interpuesta por los apelantes tras resolver que se trataba de una opinión consultiva y, por tanto, carecía de jurisdicción.

Por los fundamentos expuestos a continuación, **revocamos** el dictamen apelado.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 11.

## I.

El 28 de febrero de 2003, los esposos Fernando Paonessa López y Annette Marie Braffette Mulinelli (en conjunto, matrimonio Paonessa-Braffette) adquirieron el Apartamento 3001 del Condominio Río Mar Village (Apartamento), en el Municipio de Río Grande. En igual fecha, el matrimonio Paonessa-Braffette constituyó una hipoteca sobre el Apartamento, para la cual suscribió un pagaré hipotecario a la orden de R&G Premier Bank Puerto Rico.[2]

Debido al incumplimiento del matrimonio Paonessa-Braffette con los pagos de la hipoteca, U.S. Bank National Association interpuso una demanda de cobro de dinero y ejecución de hipoteca. En cuanto a esta causa, el 5 de marzo de 2018, el TPI notificó una sentencia sumaria a favor del acreedor mediante la cual ordenó la venta judicial del Apartamento. Habiéndose celebrado la venta, el 26 de agosto de 2021, U.S. Bank National Association se adjudicó el inmueble, vendiéndolo después al matrimonio compuesto por el señor José Luis Rocafort Silva y la señora Eyla Idame Calimano Ramírez (en conjunto, matrimonio Rocafort-Calimano).

Conforme arroja el expediente, el 8 de abril de 2022, el Consejo de Titulares emitió una certificación de deuda de cuotas de mantenimiento ascendente a $179,154.60, contabilizada desde julio de 2010 y acumulada por el matrimonio Paonessa-Braffette. Cuatro días despúes, el 12 de abril de 2022, Banco Popular cursó una misiva al matrimonio Rocafort-Calimano en la que le notificó su compromiso de pagar las deudas del Apartamento hasta la fecha del cierre de la compraventa. De modo que, según surge en la carta, relevó al matrimonio Rocafort-Calimano de las deudas que hubiere previo a la fecha de la transacción entre ambos.

---

[2] Es menester señalar que posteriormente, el 1 de julio de 2007, el referido préstamo hipotecario fue transferido al fideicomiso CSMC 2007-5, cuyo fiduciario es U.S. Bank National Association. A raíz de un *limited power of attorney*, Banco Popular funge como agente de U.S. Bank National Association y, en lo aquí atinente, ejecuta la gestión de cobro de las acreencias del fideicomiso e interpone aquellas acciones judiciales relacionadas a los intereses de su representado.

Así las cosas, el 25 de junio de 2025, los apelantes, a través de sus respectivas representaciones legales, presentaron una *Petición Conjunta de Sentencia Declaratoria*.[3] En esencia, el Consejo de Titulares planteó que U.S. Bank National Association es un adquirente voluntario del inmueble y, de conformidad con la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, mejor conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), responde por la totalidad de la deuda de mantenimiento acumulada. Por su parte, Banco Popular arguyó que U.S. Bank National Association es un adquirente involuntario, de modo que, de conformidad con el referido estatuto, responde únicamente hasta la deuda acumulada correspondiente a los seis (6) meses anteriores a la fecha de su adquisición de la propiedad. En ese sentido, solicitaron al TPI que dictara una sentencia declaratoria mediante la cual dilucidara si U.S. Bank National Association es un adquirente voluntario o involuntario, junto con los efectos relativos al pago de la deuda que el dictamen conllevara.[4]

Tras varios incidentes procesales que no son meritorios detallar, el 1 de diciembre de 2025, el foro *a quo* emitió y notificó la *Sentencia* apelada, mediante la cual desestimó con perjuicio el caso ante sí. En específico, allí el TPI consignó lo siguiente:

> Como puede apreciarse de la petición, la misma no se trae como una controversia real y genuina, sino como una opinión consultiva exparte [sic] en la que Banco Popular solicita que el Tribunal opine que U.S. Bank National Association, es un adquirente involuntario. Ni siquiera se trae al pleito al Condominio Rios [sic] Mar Village, quien sería la parte afectada si el Tribunal determinase que U.S. Bank National Association es un adquirente involuntario. Nos reafirmamos en que los Tribunales solo atendemos casos y controversias, NO emitimos opiniones consultivas. A la luz de la doctrina antes esbozada, carecemos de jurisdicción para considerar los méritos de lo solicitado.[5]

---

[3] SUMAC TPI, Entrada Núm. 1.

[4] Estimamos importante destacar que, el 27 de junio de 2025, el TPI emitió una *Orden* en la que le dictó a los apelantes a que completaran el pago de los aranceles correspondientes a la primera comparecencia de un asunto contencioso, pues solo cumplimentaron los aranceles que corresponden a los asuntos *ex parte*. *Íd.*, Entrada Núm. 5. Notificada el 30 de junio de 2025. La referida deficiencia fue cumplida el 2 de junio de 2025 por Banco Popular. *Íd.*, Entrada Núm. 5. Notificada el 30 de junio de 2025.

[5] *Íd.*, Entrada Núm. 11, pág. 3.

No conteste con ello, el 15 de diciembre de 2025, Banco Popular presentó una *Moción de Reconsideración*.[6] En síntesis, sostuvo que constituyó un error en la apreciación fáctica que el TPI concluyera que la acción se presentó de forma *ex parte* y que el Consejo de Titulares no formaba parte en esta. En ese sentido, resaltó que la petición fue interpuesta tanto por Banco Popular, como por el Consejo de Titulares mediante representantes legales distintos planteándose argumentos jurídicos antagónicos entre sí. De igual forma, esgrimió que el caso presentaba una controversia concreta entre ambas partes, quienes presentaban intereses y posiciones legales adversas que planteaban una incertidumbre jurídica madura para ser clarificada mediante sentencia declaratoria. Ese mismo día, el foro de instancia emitió y notificó una *Orden* a través de la cual rechazó el petitorio de reconsideración.[7]

Inconformes, el 14 de enero de 2026, los apelantes comparecieron ante nos, mediante el presente *Recurso de Apelación*[8] e imputaron al TPI la comisión de los siguientes errores:

> **Primer señalamiento de error:** Erró el Tribunal de Primera Instancia al determinar que la Petición Conjunta de Sentencia Declaratoria fue presentada de forma *ex-parte* cuando en realidad fue conjuntamente por Banco Popular de Puerto Rico y el Consejo de Titulares del Condominio Rio Mar Village, cada uno con representación legal independiente.

> **Segundo señalamiento de error:** Erró el Tribunal de Primera Instancia al concluir que el Consejo de Titulares del Condominio Rio Mar Village no fue incluido como parte en el procedimiento, cuando consta expresamente como peticionario desde el inicio del caso.

> **Tercer señalamiento de error:** Erró el Tribunal de Primera Instancia al determinar que no existe una controversia real y justiciable que amerite la intervención judicial mediante sentencia declaratoria y desestimar el caso por falta de jurisdicción.

Así pues, y contando con el beneficio del expediente ante nos, procedemos a disponer del presente asunto, no sin antes exponer el marco jurídico aplicable.

---

[6] *Íd.*, Entrada Núm. 15.
[7] *Íd.*, Entrada Núm. 16.
[8] SUMAC TA, Entrada Núm. 1.

**II**.

*-A-*

Sabido es que el concepto de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el poder judicial. *Rivera Segarra v. Rivera Lassen*, 214 DPR 111, 132 (2024) al citar a *Hernández, Santa v. Srio. de Hacienda,* 208 DOR 727, 738 (2022) y otros. En ese sentido, sabemos que no hay una controversia real cuando se procura resolver una cuestión política; una de las partes carece de legitimación activa; hechos posteriores al comienzo del pleito han tornado la controversia en académica; las partes están tratando de obtener una opinión consultiva, o se intenta promover un pleito que no está maduro. *Íd.* al citar a *Ramos, Méndez v. García García*, 203 DPR 379 (2019)

Como corolario de lo anterior, una opinión consultiva es "la ponencia legal emitida por un tribunal cuando no tiene ante sí un caso o una controversia justiciable, y cuyo resultado, por tanto no es obligatorio." *Ortiz v. Panel FEI*, 155 DPR 219, 251 (2001), al mencionar a H.C. Black, Black's Law Dictionary, 7ma ed., Minnesota, Ed. West Publishing Co., 1999, pág. 1119. Mediante su prohibición, los tribunales intentan prevenir que se emitan opiniones en el vacío o abstracto que conduzcan a los tribunales a ser asesores o consejeros. *Íd.*

Cónsono con lo anterior, "[l]a doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de los mismos." *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007). En ese sentido, la jurisdicción consiste en el poder o la autoridad que posee un tribunal para considerar y resolver las controversias que se presentan ante sí. *Markovic v. Meldon*, 2025 TSPR 99, 216 DPR ___ al mencionar a *JMG Investments v. ELA et al.*, 203 DPR 708, 714 (2019). Véase también, *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021). Es harto conocido que

los tribunales deben ser celosos guardianes de su jurisdicción y deben atender ese asunto de manera preferente, haya sido cuestionado por las partes o *motu proprio. Markovic v. Meldon*, *supra*. La ausencia de jurisdicción no es susceptible de ser subsanada, las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este abrogársela y conlleva la nulidad de los dictámenes emitidos. *Id., a*l mencionar a *Acosta et al. v. SLG Ghigliotti*, 186 DPR 984, 991 (2012). Además de que los tribunales deben examinar su propia jurisdicción, igualmente deben examinar la del foro de donde procede el recurso ante su consideración. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 883 (2007).

-B-

La sentencia declaratoria es un mecanismo disponible que está disponible **aun cuando existan otros remedios**, y tiene la eficacia de una sentencia o resolución definitiva. *DACO v. LUMA Energy, LLC*, 2025 TSPR 126, 216 DPR \_\_\_\_, al citar a *Rosario Rodríguez v. Rosado Colomer et al.*, 208 DPR 419, 428 (2021). Este recurso extraordinario puede dictarse en todo proceso judicial donde los hechos alegados demuestren la existencia de una controversia sustancial entre las partes que tienen intereses legales adversos, "sin que medie lesión previa de los mismos con el propósito de disipar la incertidumbre jurídica y contribuir a la paz social".[9] Su propósito, es la disipación de toda divergencia de criterio en la interpretación de un estatuto y conforme la Regla 59.1 de Procedimiento Civil,[10] **procede "aunque se inste o pueda instarse otro remedio"**. *Buxo Santiago v. ELA*, 2024 TSPR 130, 215 DPR \_\_\_\_.  (Énfasis nuestro).

Dicha regla claramente establece que no se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. A su vez, la Regla 59.2 del referido

---

[9] *Id.*, al citar a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 6001, pág. 623.
[10] 32 LPRA Ap. V R. 59.1

cuerpo, establece quiénes pueden solicitar el mecanismo de sentencia declaratoria, la facultad de interpretación y el ejercicio de las facultades. Específicamente, lee como sigue:

> (a) **Toda persona** interesada en una escritura, un testamento, un contrato escrito u otros documentos constitutivos de contrato, o **cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto**, una ordenanza municipal, un contrato o una franquicia, **podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos**, ordenanzas, contrato o franquicia, **y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven**. Un contrato podrá ser interpretado antes o después de haber sido infringido.

> (b) Los(Las) albaceas, administradores(as) judiciales, fideicomitentes, fideicomisarios(as), fiduciarios(as), tutores(as), acreedores(as), legatarios(as), herederos(as) o causahabientes que actúen en esas capacidades o en representación de otras personas interesadas, podrán pedir y obtener una declaración de derechos o de relaciones jurídicas, en todos los casos en que se administren fideicomisos, fundaciones, bienes de difuntos(as), menores incapacitados(as) o insolventes:

>> (1) Para determinar sobre clases de acreedores(as), legatarios(as), herederos(as), causahabientes u otros(as); o

>> (2) para ordenar a los(las) albaceas, administradores(as) o fideicomisarios(as) que ejecuten o se abstengan de ejecutar cualquier acto determinado en su capacidad fiduciaria, o

>> (3) para determinar sobre cualquier cuestión que surja en la administración de los bienes o del fideicomiso, incluso las de interpretación de testamentos y otros documentos.

> (c) La enumeración hecha en los incisos (a) y (b) de esta regla, no limita ni restringe el ejercicio de las facultades generales conferidas en la Regla 59.1, dentro de cualquier procedimiento en que se solicite un remedio declaratorio, siempre que una sentencia o decreto haya de poner fin a la controversia o despejar una incertidumbre. (Énfasis suplido).

Ciertamente, la procedencia del recurso de sentencia declaratoria se limita a casos que plantean una controversia "real, de índole práctica y no académica o teórica, y determinante del asunto en discusión." *Díaz, Díaz v. Asoc. Res. Quintas San Luis*, 196 DPR 573, 599 (2016). Además, para que proceda una sentencia declaratoria, "la controversia trabada debe ser actual y entre partes que tengan intereses legales adversos." *Id.* Como corolario de lo anterior, "[l]a actualidad de la controversia surge cuando el tribunal [se enfrenta] con realidades y no con hechos imaginados." *Íd.* al citar a *Moscoso v. Rivera,* 76 DPR 481, 493 (1954) (corchetes en el original).

Por el contrario, si la controversia no está lo suficientemente arraigada a hechos específicos o el daño que puede ocasionarse, y se busca evitar, depende de hechos contingentes demasiado especulativos, no procederá la sentencia declaratoria. *Díaz, Díaz v. Asoc. Res. Quintas San Luis*, *supra*, pág. 599. El objetivo de la discutida regla es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual se dilucide ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. *Suárez v. CEE I*, 163 DPR 347, 354 (2004) al mencionar a *Charana v. Pueblo*, 109 DPR 641, 653 (1980).

C.

De otra parte, es sabido que los asuntos de jurisdicción voluntaria, o *ex parte*, se caracterizan por su esencial naturaleza no contenciosa toda vez que "no se promueve acción alguna entre partes conocidas y determinadas. Los peticionarios son los únicos interesados en el remedio que se solicita. Puede, desde luego, convertirse el procedimiento en contencioso si compareciere una parte oponiéndose o pretendiendo un interés adverso al de los peticionarios." *RPR & BJJ Ex Parte*, 207 DPR 389, 405 (2021).

No obstante lo anterior, el Tribunal Supremo de Puerto Rico ha indicado que en caso de surgir una controversia genuina en un procedimiento *ex parte*, "el foro primario debe adjudicarla mediante un trámite dotado de múltiples características análogas a las de un juicio contencioso [...]". *Íd.* (*citando a Batiz v. Tribunal Superior*, 104 DPR 41, 46 (1975)) (nota al calce omitida) (corchetes en el original).

Sobre ello, nuestro Máximo Foro judicial local ha indicado que debe seguirse el espíritu de la Regla 1 de Procedimiento Civil, *supra*, de forma tal que se garantice la solución justa, rápida y económica de todo procedimiento, además de que "la adjudicación de controversias [se haga] libre de formalismos y sutilezas puramente legalistas." *Íd.*, págs. 405-406. Es decir, "la adjudicación de controversias debe hacerse libre de

formalismos y sutilezas puramente legalistas". Claro está, "[l]a jurisdicción voluntaria no existe para eludir los procedimientos ordinarios prescritos por ley." *Íd.*, pág. 406.

Expuesta la normativa jurídica pertinente, procedemos a disponer del asunto ante nos.

### III.

En el presente caso, los apelantes aducen que el TPI se equivocó al desestimar la causa de acción sobre sentencia declaratoria que instaron conjuntamente. Con tal propósito, señalan y discuten tres (3) errores que, por estar íntimamente relacionados entre sí, discutiremos de manera conjunta.

Esencialmente, los apelantes arguyen que la causa de acción, contrario a lo resuelto por el TPI, no se trata de una acción judicial *ex parte*, sino que el Consejo de Titulares compareció como peticionario. Asimismo, aseveran que el asunto traído a la atención del TPI planteaba una controversia justiciable y no una opinión consultiva como dicho foro resolvió. *Les asiste la razón*.

Según arriba relatamos, en el caso el foro de instancia determinó que, a pesar de ser indispensable en cuanto la sentencia declaratoria y cuyos derechos se afectarían directamente de emitirse sentencia, el Consejo de Titulares no había sido traído al pleito. No obstante, una lectura de la *Petición Conjunta de Sentencia Declaratoria* nos permite apreciar que tal apreciación es errada.

En el presente caso, no hay duda de que los apelantes comparecieron al foro de instancia de forma conjunta para solicitar remedio judicial que aclare una disyuntiva jurídica entre ambos. En ese sentido, distinto a los procedimientos de jurisdicción voluntaria arriba citados, los apelantes presentaron, de entrada, una cuestión jurídica contenciosa entre sí y el único elemento no contencioso es que solicitan el mismo remedio para

poner fin a la incertidumbre jurídica entre ambos: una sentencia declaratoria. Es decir, el presente asunto no se trata de una opinión consultiva exparte mediante la cual el Banco Popular de forma exclusiva acudió al tribunal a solicitarle que opine que U.S. Bank National Association es un adquirente involuntario como entendió el TPI.

Por el contrario, y según puede constatarse de la propia *Petición Conjunta de Sentencia Declaratoria,* al amparo de la herramienta de sentencia declaratoria, el Banco Popular **y** el Consejo de Titulares del Condominio Río Mar Village acudieron representados por sus respectivas abogadas. En dicho escrito, las dos (2) personas jurídicas, sometieron planteamientos legales antagónicos, que coinciden en que una sentencia declaratoria habría de poner fin a la controversia entre ambas, y así **lo solicitaron conjuntamente** al foro *a quo*. Más aún, cabe resaltar que el propio foro de instancia identificó que el asunto era uno contencioso y que se cancelaron aranceles correspondientes a asuntos no contenciosos, por lo que dictó una *Orden* para cubrir la deficiencia arancelaria.[11]

En ese sentido, el TPI erró al interpretar que la causa de acción en el presente caso fue instada únicamente por Banco Popular y que el Consejo de Titulares no formaba parte del asunto. También se equivocó cuando *a quo* entendió que el asunto planteado no constituía una controversia susceptible de ser resuelta mediante sentencia declaratoria sino una opinión consultiva y resolver que carecía de jurisdicción. Nos explicamos.

La doctrina de la opinión consultiva se distingue por su propósito de "evitar que se produzcan decisiones en el vacío, en el abstracto o bajo la hipótesis de índole especulativa . . . ." *Asoc. Alcaldes v. Contralor*, 176 DPR 150, 158 (2009). En ese sentido, una opinión consultiva es aquella ponencia emitida por un tribunal cuando no tiene ante sí una controversia justiciable y su resultado, por lo tanto, no es obligatorio. *Íd.; Ortiz v. Panel FEI*, *supra*,

---

[11] SUMAC TPI, Entrada Núm. 5.

pág. 251. Es por ello por lo que los tribunales, al presentársele un asunto que no sea justiciable, como lo es una opinión consultiva, no cuentan con otra facultad que no sea declararse sin jurisdicción. *Ramos, Méndez v. García García, supra*, págs. 393-394; *Bhatia Ghautier v. Gobernador, supra*, págs. 68-69.

Por otro lado, y según arriba citamos, el fin primordial de la sentencia declaratoria es aclarar las neblinas de una incertidumbre jurídica. En ese sentido, como lo establece nuestro ordenamiento jurídico, el criterio rector al analizarse la procedencia de una sentencia declaratoria es que esta ponga fin a la incertidumbre o controversia legal que originó el procedimiento.[12] Así pues, la sentencia declaratoria puede ser dictada en los procesos en los cuales concurran hechos que demuestren la existencia de una controversia actual y sustancial, trabada en hechos específicos, entre partes que tengan intereses legales adversos, sin que medie lesión previa de los mismos. *Beltrán Cintrón v. ELA et al., supra*, pág. 109; R. Hernández Colón, *op. cit.*, pág. 560.

En el presente caso, los apelantes presentaron una *Petición Conjunta de Sentencia Declaratoria* y, al amparo de la Ley de Condominios, *supra*, y su jurisprudencia interpretativa, plantearon la existencia de una disyuntiva en su relación jurídica. En específico, el Consejo de Titulares arguyó que el representado de Banco Popular, U.S. National Bank Association, respondía, en calidad de adquirente voluntario al amparo del referido estatuto, por la totalidad de ciertas deudas presuntamente acumuladas de un inmueble que adquirió, por virtud de la venta judicial derivada de un proceso de ejecución de hipoteca sobre dicha propiedad. Banco Popular, por su parte, alega que U.S. National Bank Association no responde en carácter de adquirente voluntario sino involuntario, por lo que no es responsable de la totalidad de la deuda alegada. O sea, que, sobre sus respectivas posiciones,

---

[12] Regla 59.3 de Procedimiento Civil, *supra*.

ambas partes presentaron sus argumentos contrapuestos y solicitaron, en términos prácticos, que el TPI declarara a quién le asistía la razón.

Evidentemente, entre los apelantes existe una relación jurídica con derechos y obligaciones respectivas, pero cuyo alcance está controvertido dadas su diferente interpretación en cuanto a la responsabilidad de pago que le corresponde a Banco Popular y el derecho de cobro que tiene el Consejo de Titulares sobre las cuotas aparentemente adeudadas. Sus posturas están basadas en lo que ambas interpretan de la Ley de Condominios. Por tanto, la Regla 59.2 de Procedimiento Civil, *supra*, les reconoce como sujetos poder instar una solicitud de sentencia declaratoria. Al final de cuentas, este remedio está disponible para que toda persona cuyos derechos o relaciones jurídicas se afecten por un estatuto, solicite a un tribunal la declaración sobre sus derechos o relaciones jurídicas que de la ley se deriven.

Todo lo anterior apunta a que el TPI no estaba ante una opinión consultiva, pues, la incertidumbre planteada por los apelantes es, precisamente, la que la sentencia declaratoria está diseñada para contestar- **aun cuando exista otro remedio judicial que pueda instarse por cualquiera de ambos.** En adición, la controversia trabada entre los apelantes demostró estar anclada en hechos específicos y fácilmente corroborables, así como que no depende de sucesos imaginarios, lo cual es imprescindible para que proceda el remedio de sentencia declaratoria.

Habida cuenta de lo anterior, resolvemos que erró el TPI al entender que carecía de jurisdicción por falta de parte indispensable, entiéndase el Consejo de Titulares, y que el asunto planteado se trató de una opinión consultiva. Por tanto, corresponde revocar el dictamen apelado y devolver el asunto al foro recurrido.

De esta forma, adicionalmente, adelantamos la reiterada política pública judicial de que los casos se vean en sus méritos, *Rivera Candela v.*

*Universal Insurance Company*, 214 DPR 1007, 1031 (2024), y cumplimos el espíritu de que las Reglas de Procedimiento Civil sean interpretadas de modo que faciliten el acceso a los tribunales y garanticen una solución rápida, económica y justa a las personas. Regla 1 de Procedimiento Civil, *supra*.

## IV.

Por los fundamentos previamente expuestos, revocamos la *Sentencia* apelada y devolvemos el caso al Tribunal de Primer Instancia, para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.  La Jueza Rivera Marchand disiente sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones